UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KELVIN DANIELS, *et al*.          :
    Plaintiffs,          :
              :
v.          :          No. 23-cv-3867
              :
MARLEIHIA HARPER, *et al.*,          :
    Defendants.          :

<u>MEMORANDUM</u>

Joseph F. Leeson, Jr.                    February 13, 2024

    *Pro se* Plaintiffs Kelvin Daniels and Danee Slaton, husband and wife, filed this civil

rights action pursuant to 42 U.S.C. § 1983, alleging that various defendants involved in

dependency proceedings to remove their eight children from their care violated their

constitutional rights.[1]  Plaintiffs seek leave to proceed *in forma pauperis*.  For the following

reasons, the Court will grant Plaintiffs leave to proceed *in forma pauperis* and dismiss their

Complaint.

## I.    FACTUAL ALLEGATIONS

    The Complaint names fifty-six (56) Defendants, many of whom are associated with the

Philadelphia Department of Human Services ("DHS") or the Philadelphia Police Department, or

were involved in the dependency proceedings concerning Plaintiff's eight children, including

---

[1] Daniels' and Slaton's eight minor children – who range in age between fourteen years old and seven months old – were also named as Plaintiffs.  Because legal counsel did not enter an appearance their behalf, as the Court directed (*see* ECF No. 6), the claims of the minor children will be dismissed without prejudice.  *See Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania*, 937 F.2d 876, 882 (3d Cir. 1991) ("[A] non-lawyer appearing *pro se*, . . . [is] not entitled to play the role of attorney for his children in federal court.").  This means any claims based on harm caused to the minor children, including harm related to the alleged abuse they suffered while in foster care or related to their removal from their parents' home, may not proceed in this lawsuit.

judges and attorneys.  (Compl. at 1-5.)[2]  Other Defendants include Daniels' and Slaton's family members, their children's foster parents, or individuals whose identity or role in the events giving rise to Plaintiffs' claims is not known.[3]

Plaintiffs' Complaint consists of the completed standard form complaint, 14 additional typed pages of factual allegations, and over 170 additional pages of exhibits.  The factual allegations are at times rambling, disjointed, and difficult to understand.  Affording Plaintiffs the most liberal construction of the Complaint, the Court understands Plaintiffs to allege that various individuals involved in the removal of their eight children, the placement of the children in foster care, and the arrest and prosecution of Plaintiffs for crimes related to their treatment of their children, violated their constitutional rights.

Plaintiffs allege that on June 29, 2019, their eldest daughter, T.R., a minor, threatened her pregnant mother, Slaton, and her siblings with a knife.  (Compl. at 8.)  Daniels determined that, as a consequence of T.R.'s threat, T.R. had to return to a "mental facility" where she had been sent by her parents on three prior occasions for failing to "follow Islam [and] obey her parents"

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Many of the names listed in the Complaint are not mentioned anywhere in the body of the Complaint.  The Defendants named in the Complaint include:  the Department of Human Services; Amy Flite (DHS Supervisor), Marleihia Harper (DHS Investigator), Nicole Mack, Tylishia Williams, Daniel Metz, Deonna Briggs, Roberto Valdes, Latoya Bullock, Doctor Michelle Dominiguez, Doctor Norell Atkinson, Collen Getz, Kirby Gerlus, Mario D'Adamo, Richard Coble, Katherine Holland, Jelea McNeil, Victoria Bibbs, Gail Quarterbaum, Clair Leotta, Stacy Tepe, Margaret Farmer, Detective Jane Costello, Detective Ray Smith, Detective Linda Pace, Detective Vondel Cook, Detective Thomas Price, Detective Mark Webb, Detective Bill Brophy, Detective Patricia Eberhardt, Police Officer Tyrone Greene, Officer Steve Bezich, Judge Joseph Fernandes, Judge Deborah Canty, Chris Johnson, Ann Starr, James Martin, Deborah Fegan, Clymer D. Bardsley, Michael Angelotti, Susan Rubinovitz, Jasmine Weiss, Jeremy Kohut, Denine Jones, Latasha Custus, Erica Cook, Maureen Pie, Katrina Collins, Zorhormella Savoy, April Summer, Abdul Qui Abdul Rahman, Jason Parris, Hasan Somali, T.R., Lisa Renee Bryant Slaton, and Dontey Slaton.  T.R. is the eldest of Plaintiffs' children.

and due to a history of mental health disorders.  (*Id*. at 8, 9.)  When Slaton attempted to restrain

T.R., T.R. allegedly "punched and kicked" Slaton.  (*Id*. at 10.)  T.R. called police officers to the

home and told the officers that Slaton had hit her.  (*Id*. at 8.)  T.R. was escorted to the Special

Victims Unit, where she allegedly denied having any injuries.  (*Id*.)  The next day, DHS

investigator Marleihia Harper visited Plaintiffs at their home.  (*Id*.)  Plaintiffs explained to

Harper that T.R. made a "false" police report about being hit and that they planned to send T.R.

back to a "mental facility because of [her] breaking her promise to follow [their] religion by

threatening to hurt her mother [] and her siblings with a knife."  (*Id*.)  Harper allegedly told

Plaintiffs that she does "not agree with [their] religion and parenting skills" and decided to

remove T.R. from the home at that time.  (*Id*. at 8-9.)  Plaintiffs allege that Harper "forged a false

Order of Protective Custody" to justify the removal of T.R. from their home.  (*Id*. at 9.)

On July 15, 2019, Plaintiffs reported to police that T.R. "punch[ed] and kick[ed] her

mother to run out [of the] house [and] not go back to [the] mental facility."  (*Id*.)  This resulted in

Plaintiffs filing a protection from abuse ("PFA") action against their daughter.  (*Id*.)  When

Slaton attempted to "serve the PFA" complaint on DHS, DHS worker Deonna Briggs refused to

receive it.  (*Id*. at 11.)  Slaton then advised Briggs and other DHS workers that Plaintiffs intended

to "sue them in civil courts . . . for illegally taking their daughter" and for "interfering with

[their] Islamic home and Parenting skills."  (*Id*.)

At some point, although it is not clear from the Complaint when, T.R. told DHS

representatives that she was a victim of sexual abuse by her parents.  (*Id*. at 11.)  Plaintiffs allege

that Child Protective Service ("CPS") reports associated with the children's dependency

proceedings stated that T.R. was removed from Plaintiffs' home in July of 2019 as a result of

sexual abuse.  (*Id*.)  Plaintiffs state, however, that this was "a lie" and that T.R. was actually

removed "illegally" by DHS on June 29, 2019.  (*Id*. at 11-12.)  On  July 25, 2019, Harper, together with other Defendants from DHS and the Philadelphia Police Department, went to Plaintiffs' home to remove six of Plaintiffs' other children.  (*Id*. at 12.)  On September 5, 2019, Harper and other Defendants from DHS removed Plaintiffs' newborn daughter.  (*Id*. at 14.) Plaintiffs allege that their children were then subjected to physical and sexual abuse by foster care parents.  (*Id*. at 15-16.)

Plaintiffs contend that Defendants removed their other children in "retaliation" for filing the PFA against T.R. and because Plaintiffs warned DHS that they intended to bring a civil case against them.  (*Id*. at 12.)   Plaintiffs also allege that DHS representatives "slandered" Plaintiffs, falsified documents, and lied under oath during dependency court proceedings.   (*Id*. at 13.) They contend that the removal of their children and the "slander" of them by DHS violated their First Amendment right to exercise their religion, their Fourth Amendment rights against unreasonable searches and seizures, and their Fourteenth Amendment due process and equal protection rights.  (*Id*. at 5.)  Plaintiffs also state that their Sixth Amendment rights were violated because they failed to get proper notice of dependency court hearings, including one that occurred on September 4, 2019 when a finding of abuse was made by Judge Joseph Fernandes. (*Id*. at 14.)

Plaintiffs allege that they were arrested on August 19, 2021.[4]  (Compl. at 22.)  The public record reveals that in March of 2023, Slaton and Daniels were found guilty of aggravated assault

---

[4] Slaton also alleges a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), based on allegations that she was mistreated by "FBI Marshalls" at the time of the arrest.  (Compl. at 5-6.)  Slaton does not tie these allegations to any specifically named Defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").  In any event, any *Bivens* claim based on mistreatment that occurred at the time of her arrest would be time-barred.  *See infra* at Section III.A; *Napier v. Thirty or More Unidentified*

of a victim less than 13, conspiracy, endangering the welfare of children, and possession of an instrument of a crime.  *Commonwealth v. Slaton*, CP-51-CR-0008423-2021, CP-51-CR-0008425-2021 (C.P. Phila.); *Commonwealth v. Daniels*, CP-51-CR-0008422-2021,  CP-51-CR-0008424-2021 (C.P. Phila.)  Daniels was also found guilty of corruption of minors. *Commonwealth v. Daniels*, CP-51-CR-0008424-2021 (C.P. Phila.)

Based on these allegations, Plaintiffs assert constitutional claims and seek money damages and injunctive relief.  (Compl. at 186.)

## II.    STANDARD OF REVIEW

The Court grants Plaintiffs Daniels and Slaton leave to proceed *in forma pauperis* because it appears that they do not have the ability to pre-pay the fees to commence this case.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

_____

*Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988) (noting the two-year statute of limitations for *Bivens* actions).

[5] Because Daniels and Slaton are prisoners, they must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Additionally, a court may dismiss a complaint based on an affirmative defense such as the statute of limitations when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Whitenight v. Cmwlth. of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (*per curiam*) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." (citations omitted)).  As Daniels and Slaton are proceeding *pro se*, the Court construes their allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

### A.   Federal Claims

Plaintiffs assert constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207.

Plaintiffs' allegations center on DHS' removal of their eight children.  Plaintiffs allege that the dependency proceedings and statements made by Defendants during and in conjunction

6

with those proceedings violated their constitutional rights, including their rights to exercise their religion, be free from unwanted searches and seizures, due process, and equal protection under the law.  However, any claims based on the removal of Plaintiffs' children are time-barred. Section 1983 claims are subject to a two-year statute of limitations.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (explaining that the statute of limitations for § 1983 claims is governed by the personal injury tort law of the state where the cause of action arose and that Pennsylvania has a two-year statute of limitations for personal injury actions); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when [she] can file suit and obtain relief."  *Dique*, 603 F.3d at 185 (quotations omitted).  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).

Plaintiffs' § 1983 claims accrued on the dates that their children were removed – here, June 29, 2019, July 25, 2019, and September 5, 2019 (*see* Compl. at 6) – because it is apparent that on those dates Plaintiffs knew that their minor children were being removed from their care. *See Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009.") (footnote omitted); *Moore v. Morrison*, No. 21-4100, 2022 WL 824102, at *5 (E.D. Pa. Mar. 18, 2022) (dismissing § 1983 claims as time-barred where the "amended complaint makes clear on its face that the plaintiffs knew at the time in January 2017 that their children were initially removed from their care" and

thus "their claims related to the removal of their children started accruing at that time").

Plaintiffs did not bring this Complaint until September 28, 2023, over four years after their

children were initially removed.[6]  Moreover, the facts do not support a reasonable basis for

equitable tolling.  *Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 64 (3d Cir. 2021) (*per curiam*)

("Equitable tolling is generally appropriate where: (1) ("Equitable tolling is generally appropriate

where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff has

been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a

plaintiff has timely asserted her claims, but in the wrong forum.").  Accordingly, Plaintiffs'

claims based on the removal of their children are barred by the statute of limitations.[7]

---

[6] Although the Complaint was not docketed until October 2, 2023, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing.").

[7] There are other reasons why Plaintiff's § 1983 claims fail.  Many of the Defendants, such as judges, attorneys, and DHS workers prosecuting dependency matters, are immune from liability under § 1983.  *See Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *B.S. v. Somerset Cnty.*, 704 F.3d 250, 262-65 (3d Cir. 2013) (citing *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 488-89 (3d Cir. 1997)) (recognizing that "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state . . . are absolute[ly] immun[e] from suit for all of their actions in preparing for and prosecuting such dependency proceedings." (alterations in original)).

Many other named Defendants are private individuals and thus not state actors subject to liability under § 1983.  *See Leshko v. Servis*, 423 F.3d 337, 344 (3d Cir. 2005) (concluding that foster parents were not state actors subject to liability under § 1983); *see also Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) ("Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful.") (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (internal quotations omitted).  In addition, Plaintiffs list numerous Defendants in their Complaint but provide no facts about those Defendants' involvement in the events giving rise to their claims.  *See Rode*, 845 F.2d at 1207.

Plaintiffs also assert false arrest claims based on their August 2021 arrest.  (*See* Compl. at 6.)  These claims are also time-barred.  Plaintiffs were arrested on August 19, 2021.[8]  Their false arrest claims accrued on this date.  *See Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61,64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was "detained pursuant to legal process"); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for false arrest and assault . . . typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury.").  Because Plaintiffs filed their Complaint more than two years after any false arrest claim accrued, Plaintiffs' false arrest claims are time-barred and will be dismissed.  In the event the Complaint can be construed to raise any additional claims that accrued prior to September 28, 2021, those claims are also dismissed as time barred.

Finally, to the extent that Plaintiffs base any § 1983 claims on the few allegations in the Complaint that occurred within the limitations period – September 28, 2021 through September 28, 2023, the day they signed their Complaint – the claims nevertheless fail and must be dismissed.  Plaintiffs allege that Briggs, who worked for DHS, gave false testimony at Plaintiffs' 2023 criminal trial.  (Compl. at 11.)  Plaintiffs also allege that Harper, a DHS investigator, provided false testimony at a March 2022 hearing and during Plaintiffs' 2023 criminal trial.  (*Id.* at 11-12.)  Briggs and Harper are entitled to immunity for any claims based on testimony they provided in connection with the dependency proceedings or Plaintiffs' criminal trial.  *See Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (holding that under absolute witness immunity a

---

[8] The dockets for Plaintiffs' criminal matters state that they were arrested on August 27, 2021.  *Slaton*, CP-51-CR-0008423-2021, CP-51-CR-0008425-2021; *Daniels*, CP-51-CR-0008422-2021,  CP-51-CR-0008424-2021.  False arrest claims based on this arrest date would also be time-barred.

convicted defendant could not state a claim for damages under § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial); *Carter v. Kane*, 717 F. App'x 105, 109 (3d Cir. 2017) (holding that witnesses are absolutely immune from damages liability based on their testimony); *Reed v. Paye*, No. 15-6745, 2016 WL 1594576, at *3 (E.D. Pa. Apr. 19, 2016) (holding that DHS investigator was entitled to absolute immunity for testimony provided during dependency proceeding).  Finally, Plaintiffs also make vague references to a March 28, 2022 CPS report and a June 2, 2022 CPS report.  However, Plaintiffs do not appear to base any claim on these reports or tie any conduct contained within the reports to a named Defendant.  Accordingly, all of Plaintiffs' § 1983 claims will be dismissed.

## B.    State Law Claims

Plaintiffs also assert slander and defamation claims against various Defendants, including foster parents, DHS investigators, Daniels' ex-wife, and Slaton's mother.  (*See* Compl. at 20-22.)  The only independent basis for federal jurisdiction over these state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[9]   Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co*., 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to

---

[9] Because the Court has dismissed Daniels' and Slaton's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

remain.  *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  A political

subdivision of a state is a citizen of the state for purposes of determining diversity jurisdiction.

*See Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) (citing *Moor v. Alameda County*, 411

U.S. 693, 717 (1973)).  Although they do not allege citizenship of the parties, Plaintiffs provide

Pennsylvania addresses for themselves and for many of the Defendants.  Accordingly, it appears

that diversity jurisdiction is lacking over any slander and defamation claims Plaintiffs wish to

assert.[10]

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Daniels and Slaton leave to proceed *in

forma pauperis*, and dismiss their Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure

to state a claim.  The Court will grant Plaintiffs leave to file an amended complaint in the event

they can allege facts that support a claim falling within the statute of limitations.  An appropriate

Order follows, which provides further instruction on Plaintiffs' options for proceeding.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**

---

[10] In any event, it appears that any state law slander and defamation claims would be barred by the applicable one-year statute of limitations.  *See* 42 Pa. Cons. Stat. Ann. § 5523(1) (providing a one-year statute of limitations for libel and slander actions); *Rivera v. Scinico*, No. 20-416, 2020 WL 1313717, at *3 (E.D. Pa. Mar. 19, 2020) (concluding that slander claims were time-barred because not assert within one year statute limitations); *Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 303 (E.D. Pa. 2006) (noting one-year statute of limitations for defamation claims under Pennsylvania law).